UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER JORDAN TORRES, <br> Plaintiff, <br> v. <br> SCOTT KERNAN, et al., <br> Defendants. | Case No. 19-cv-00126-EMC <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** <br><br> Docket No. 28 |

## I. INTRODUCTION

Tyler Jordan Torres, a California state parolee, filed this *pro se* civil rights action under 42 U.S.C. § 1983. Defendants K. Shuder and G. Garcia filed a motion to dismiss which is presently before the court.

## II. BACKGROUND

Mr. Torres was incarcerated at CTF-Soledad at the time he filed his complaint. The complaint alleges that he received veterans' benefits that were deposited into his inmate trust account while he was imprisoned at CTF-Soledad. Defendant K. Shuder is an "accountant 1 specialist" and Defendant G. Garcia is an "accounting officer specialist" who work in the trust office at CTF-Soledad. Docket No. 1 at 3, 5. Mr. Torres alleges that Defendants Shuder and Garcia mismanaged his veterans' benefits by "failing to track and ensure that the funds are not placed against liens and hold; holds against future payments; and proper application of the Firt [sic] In – First Out (FIFO) method when processing transactions in and against his trust account." *Id.* at 5.

The complaint alleges the following: On June 20, 2017, the trust account received a

$62.60 refund check for Mr. Torres from a quarterly package vendor. Mr. Torres alleges that these returned funds originated from his veterans' benefits which he had used to purchase the quarterly package, and therefore should have been treated as veterans' benefits when the refund arrived. He alleges that the trust account officials inappropriately applied the refund to photocopy and postage requests from June 10, 2017, when he did not have funds in his trust account.

In a separate event, Mr. Torres alleges that the trust account office improperly processed money returned to the account that originally had been deposited as veterans' benefits. The trust office processed a request from Mr. Torres to send money to J. Lorenzano on February 16, 2018. *Id.* at 8. Torres sent J. Lorenzano $150.00 on February 1, 2018. On March 11, 2018, he received a deposit of $140.00 from J. Lorenzano. Torres alleges that a "mistake was made," as the explanation for why J. Lorenzano sent back the money. Torres alleges he was harmed because after J. Lorenzano deposited the $140 in Torres' account, prison officials deducted $70 for a restitution fine, $7 for an administrative fee, and $53 for various PLRA fees. Docket No. 1-1 at 5. Mr. Torres contends that these fines and fees were unlawfully deducted from his account because the $140 was money that originally came from his veterans' benefits and was therefore exempt from being used to cover court fines and fees. Defendant Shuder refused to correct the alleged error. *Id.* at 8-9.

Mr. Torres further alleges that the trust account office manipulated his requests for postage and copies, with the result that his veterans' benefits were improperly used to pay those charges. He alleges that he made eight requests for postage and copies on June 10, 2017. The trust account allegedly processed only one of those requests when he had a positive balance on June 15, 2017; then held the other requests until the refund check arrived and created a positive balance against which four more of the June 10, 2017, requests could be processed. K. Shuder then held the other three requests for the next positive balance and processed those three requests on July 14, 2017 against Mr. Torres' July 2017 veterans' benefits payment. Mr. Torres alleges that all eight requests should have been processed on June 15, 2017, creating liens and holds. Mr. Torres contends that they should have processed the request even though he didn't have money in his account to pay for the request, and in so doing officials would have created a lien or hold on his

2

account that could not have been paid for using his veterans' benefit money. *Id.* at 7-8. Mr. Torres was "harmed" because they waited to process three of his June copying and postage requests (totaling $77.60) until his veterans' benefit for July had been deposited in his account, and so he "lost" $77.60 of that months' benefit to paying for the requests that he made back in June when he didn't have money in his account. He would have preferred that prison officials process all the requests together in June when he didn't have money in his account, because that would have created a lien or hold on his account, and veterans' benefits cannot be used to pay off liens and holds.

The Court conducted an initial review of the complaint as required by 28 U.S.C. § 1915A, and determined that the complaint stated a cognizable claim. The Court wrote: "In brief research, the Court was unable to find a clear answer in favor or against Mr. Torres' contention that the protections of 38 U.S.C. § 5301 apply to inmate trust account deposits that are refunds/returns of funds that originated as veterans' benefits. The Court thus refused to dismiss this case at the screening stage under 28 U.S.C. § 1915A.

Giving the *pro se* complaint the liberal construction to which it is entitled, the Court held that the allegations appear to state a cognizable claim against Defendants Shuder and Garcia for a violation of 38 U.S.C. § 5301 by causing Mr. Torres' veterans' benefits to be applied incorrectly." Docket No. 15 at 3.

Defendants Shuder and Garcia now move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that (a) the complaint fails to state a claim upon which relief may be granted and (b) they are entitled to qualified immunity. Mr. Torres opposes the motion to dismiss.

**III.    DISCUSSION**

A.    Motion to Dismiss

  1.    Rule 12(b)(6) Standards

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the ground that there is a "failure to state a claim upon which relief can be granted." A motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief that

is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). The Court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must construe *pro se* pleadings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010). However, the Court need not accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended*, 275 F.3d 1187 (9th Cir. 2001).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

As a general rule, the court may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). However, the court may consider documents attached to the complaint without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. A district court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

2. Qualified Immunity Standards

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine thus intends to take into account the real-world demands on officials in order to allow

4

them to act "swiftly and firmly" in situations where the rules governing their actions are often "voluminous, ambiguous, and contradictory." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (citation omitted).

The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established, such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson*, 555 U.S. at 232-236 (overruling the sequence of the two-part test set forth in *Saucier*, which required determining a deprivation first and then deciding whether such right was clearly established). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Id*. At 236.

"An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City and County of San Francisco, Cal. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (alteration and omission in original; citation omitted); *see, e.g., Carroll v. Carman*, 574 U.S. 13, 16 (2014) (citations omitted) (law not clearly established whether officer may conduct a 'knock and talk' at any entrance to a home that is open to visitors, rather than only the front door); *Hines v. Youseff*, 914 F.3d 1218, 1229 (9th Cir. 2019) (defendants entitled to qualified immunity where "the specific right that the inmates claim in these cases—the right to be free from heightened exposure to Valley Fever spores—was not clearly established at the time"); *Horton v. City of Santa Maria*, 915 F.3d 592, 600-01 (9th Cir. 2019) (officer entitled to qualified immunity on failure-to-protect claim from pretrial detainee who attempted to hang himself because there was conflicting information as to whether he was suicidal and the case law "was simply too sparse, and involved circumstances too distinct from those in this case, to establish that

5

1 a reasonable officer would perceive a substantial risk that [detainee] would imminently attempt
2 suicide").

3      3.     38 U.S.C. § 5301

38 U.S.C. § 5301(a) states that: "Payments of benefits due or to become due under any law administered by the Secretary [of Veterans Affairs] shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." *Id*. An action under § 1983 may be brought for a violation of 38 U.S.C. § 5301. *See Higgins v. Beyer*, 293 F.3d 683, 689-90 (3d Cir. 2002).

In its screening order, the Court noted that after brief research it could find no case law either in support of, or against, Mr. Torres' position that defendants violated § 5301. Further research has revealed a dearth of case law interpreting this statute. Defendants claim they are entitled to qualified immunity because no reasonable trust account officer would have known that they were violating § 5301 by using money refunded by third parties to cover holds or by waiting to process postage and copy requests until funds were available. The Court agrees. Even if the allegations of the complaint are sufficient to state a claim for violation of § 5301, defendants are entitled to qualified immunity because of the lack of clearly established law.

In *Nelson v. Heiss*, 271 F.3d 891, 894-96 (9th Cir. 2001), the Ninth Circuit reviewed an inmate's claim that California Department of Corrections and Rehabilitation (CDCR) officials violated § 5301 by using his veterans' benefits to pay for what were essentially overdrafts to his prison trust account. The Ninth Circuit noted that § 5301(a) had not been construed previously, and held that under this provision, prison officials could not use an inmate's veterans' benefits to pay off holds placed on his trust account. Use of veterans' benefits to pay for overdrafts to an inmate's trust account was prohibited even if the inmate had originally authorized the charges, because it amounted to the assignment of benefits. However, the court noted that § 5301 did not preclude the inmate himself from directing that payments be deducted from funds which existed in his account at the time that he issued the direction. *Id*.

*Nelson* also discussed *Lawrence v. Shaw*, 300 U.S. 245 (1937), a case in which the Supreme Court held that a state could not tax a bank account which held veterans' benefits. In that case the Supreme Court held that under the World War Veterans' Act (38 U.S.C. § 454) veterans' benefits deposited in a bank could not be subject to property taxes. The Court concluded that,

> We hold that immunity from taxation does attach to bank credits of the veteran or his guardian which do not represent or flow from his investments but result from the deposit of the warrants or checks received from the government when such deposits are made in the ordinary manner so that the proceeds of the collection are subject to draft upon demand for the veteran's use. In order to carry out the intent of the statute, the avails of the government warrants or checks must be deemed exempt until they are expended or invested.

*Id.* at 250-51.

Defendants claim that they are entitled to qualified immunity because even assuming the allegations of the complaint are true, reasonable officials in defendants' position would not have known that their conduct violated clearly established law. Defendants contend that under *Shaw*, § 5301 does not apply to veterans' benefits once the benefit money is expended or invested. Accordingly, it was not clearly established that after Mr. Torres expended his veterans' benefits on purchases from the quarterly package vender and sending money to J. Lorenzano, the refunds he later received would be considered veteran's benefits and maintain their exempt status.

Mr. Torres asserts that he did not "expend" the funds, rather, he "attempted to expend" the funds, and therefore they were still exempt veterans' benefits. This argument, however, does not overcome the lack of clearly established law. *Nelson* and *Shaw* discuss how veterans' benefits are to be handled as they come into the prisoner's account, but neither case addressed Mr. Torres' particular facts where veterans' benefits were sent to third parties, and a third-party later sent money back to the prisoner; it is unclear whether those returned funds continue to be veterans' benefits immune from assignment. Neither *Lawrence* nor *Nelson* suggests that it was "beyond debate" that defendants' conduct violated § 5301. *See Sheehan*, 135 S. Ct. 1765.

Likewise, defendants are entitled to qualified immunity concerning Mr. Torres' allegations that they improperly used his July 2017 veterans' benefits. There were no funds available in Mr.

7

Torres's account when he made his original postage and copying requests in June, therefore defendants waited to process the requests until funds became available. The last three requests were processed in July once Mr. Torres' July veterans' benefit had been deposited, and defendants used $77.60 from the benefit money to pay for the three delayed requests.

*Nelson* states that although § 5301(a), "precludes the Prison Officials from placing holds on [plaintiff's] account . . . this does not preclude [plaintiff] from directing that payments be deducted from funds which exist in his account at the time he issues the direction. Nothing we says here precludes him from currently spending the benefits he has received." 271 F.3d at 896. Mr. Torres was free to make copying and postage requests that could be paid for by his veterans' benefits if the benefit money was in his account. However, it cannot be said that it was clearly established that defendants were not free to delay his requests and then process them at such future time as benefits were in his account and available for use. *Nelson* addressed a situation in which prison officials processed the inmate's requests despite lack of funds in the account, creating a hold. It does not clearly address delayed processing of inmate requests such as Torres alleges in his complaint; Mr. Torres has not pointed to any other case law on this issue.

In sum, even assuming all the allegations of the complaint are true, defendants are entitled to qualified immunity because it was not clearly established that their actions violated § 5301. Accordingly, defendants are granted qualified immunity.

4. Violation of the CDCR Financial Information Memo

In his complaint Mr. Torres alleged that defendants violated the guidelines of the CDCR Financial Information Memo ("FIM") by not applying the "first in first out" rule, when they waited to process his postage requests until there were funds in his account to cover the requests. He also alleges that defendants failed to trace his veterans' benefits as required by the FIM. Defendants assert that violation of the FIM does not give rise to a claim under § 1983, as no violation of federal law is stated. In his opposition to defendants' Rule 12(b)(6) motion to dismiss, Mr. Torres contends that violation of the CDCR FIM was a violation of his Fourth Amendment rights because defendants wrongly seized money from his trust account. Docket No. 29 at 5.

The allegations that defendants violated the CDCR's FIM does not support a claim under § 1983 because the failure of state prison officials to follow state prison regulations does not rise to the level of a constitutional violation. *See Galen v. City of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007) ("Section 1983 requires [plaintiff] to demonstrate a violation of federal law, not state law"). Further, a prisoner is not protected by the Fourth Amendment against the seizure, destruction or conversion of his property. *See Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989). Likewise, even if the allegations are construed as a due process claim, neither the negligent nor intentional deprivation of property states a due process claim under § 1983 if the deprivation was random and unauthorized. *See Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (no due process violation where state employee negligently lost prisoner's hobby kit), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)[1]; *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (unauthorized intentional destruction of inmate's property not a due process violation where the state provides an adequate post-deprivation remedy). The availability of an adequate state post-deprivation remedy precludes relief because it provides sufficient procedural due process. *See Zinermon v. Burch*, 494 U.S. 113, 128 (1990). California law provides such an adequate post-deprivation remedy. *See Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895). Thus, although Mr. Torres may be able to bring a state law claim against defendants for violating the CDCR FIM, the allegations of the complaint do not state a cognizable claim for relief under § 1983.

To the extent Mr. Torres is attempting to bring a state law claim for violation of the CDCR FIM, this Court declines to exercise supplemental jurisdiction over the state law claim under 28 U.S.C. § 1376. As explained in this order, Mr. Torres' federal claim for violation of § 5301 is dismissed because defendants are entitled to qualified immunity. Although the Court has discretion under § 1367(c)(3) to adjudicate or to dismiss the remaining state law claims, *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001), after dismissal of all federal claims, it refuses to do so

---

[1] The Court in *Daniels* concluded that the Due Process clause of the Fourteenth Amendment was not implicated by a negligent act of an official, overruling *Parratt* "to the extent it states that mere lack of due care by a state official may "deprive" and individual of life, liberty, or property under the Fourteenth Amendment." *Id*. at 330-31.

9

here. The Court dismisses the state law claim. Mr. Torres may pursue any state law claim in state court.

     5.    <u>Injunctive Relief</u>

In addition to damages, Mr. Torres requests injunctive relief in the form of an audit of his trust account and creation of a separate inmate trust account to hold veterans' benefits. Where injunctive relief is involved, mootness must be determined in light of the current circumstances. *See Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996). Because Mr. Torres was released from prison during the pendency of this action, his request for injunctive relief is moot and must be dismissed. *See Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (when an inmate is released from prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, a claim for injunctive relief should be dismissed as moot).

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED**. The complaint is dismissed. The dismissal is without prejudice to Mr. Torres filing an action in state court to pursue any state law claims he may have.

This order disposes of Docket No. 28.

**IT IS SO ORDERED**.

Dated: April 13, 2020

_____
EDWARD M. CHEN
United States District Judge

10